## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| LIBERTY NORTHWEST INSURANCE CO., individually and as subrogee of Independent Drilling, Inc. and of Mark Durfee, and MARK DURFEE, individually,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DIXON VALVE AND COUPLING CO., a Maryland corporation; LEWIS-GOETZ AND COMPANY, INC. dba EVCO House of Hose and/or dba Jolley's EVCO, a Pennsylvania corporation; and FUKU ACCURATE INDUSTRIES CO., LTD., a Taiwan, Republic of China corporation; and JOHN DOES 1-IV; and JOHN DOE CORPORATIONS I-IV,<br><br>        Defendants. | Case No.: 1:14-cv-00308-REB<br><br><br>**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS (DOCKET NOS. 27, 34 AND 50)** |

Currently pending before the Court are Defendant Dixon Valve and Coupling Company's ("Dixon Valve") Motion for Summary Judgment (Dkt. 27), Defendant Lewis-Goetz and Company Inc.'s ("Lewis-Goetz") Motion for Summary Judgment (Dkt. 50), and Dixon Valve's Motion to Compel (Dkt. 34). Having heard oral argument and being otherwise fully advised, the Court enters the following memorandum decision and order.

**Memorandum Decision and Order- 1**

# I.  FACTUAL BACKGROUND

This is a products liability case brought by Plaintiff Mark Durfee ("Durfee") and Plaintiff Liberty Northwest Insurance Company ("Liberty Northwest")[1] to recover for injuries Durfee sustained while conducting a water-well drilling operation in North Dakota on June 13, 2012. Durfee was injured when the foot valve on his drilling operation became pressurized, blew off, and launched a T-shaped piping assembly at Durfee, causing multiple injuries. The "foot valve" was a 4" inch cast-iron valve that Durfee purchased on May 30, 2012, at the Lewis-Goetz retail store in Idaho Falls, Idaho.  Durfee alleges that the particular valve was manufactured by Dixon Valve, carried a product identification number of Dixon Valve "DFVS40 foot valve," and that it failed prematurely and unexpectedly, proximately causing his injuries.

Lewis-Goetz operates retail stores in Utah and Idaho, with its main warehouse located in West Valley, Utah.  The Idaho Falls location, known as "EVCO House of Hose", was acquired by Lewis-Goetz in January of 2011.  Sokol Aff., Ex. H, Deposition of Lewis-Goetz 30(b)(6) designee Brian Walker ("Walker Dep.") (Dkt. 27-12), 26:13-20.  Sometime prior to January of 2009, Lewis-Goetz changed its primary supplier of foot valves from Dixon Valve to United Pacific Distributors.  Sebastian Decl., Ex. D, Walker Dep. (Dkt. 28-1), 19:1-20:14.  Between January of 2009 and May 30, 2012, Lewis-Goetz purchased 70 of the 4" foot valves from United Pacific Distributors, eight 4" foot valves from a supplier identified as "PT and Coupling", and two 4" foot valves from Dixon Valve.  Sokol Aff., Ex. G, Lewis-Goetz's Supplemental Answers and Responses to Dixon Valve's First Set of Interrogatories and Requests for Production (Dkt. 27-11), pp. 1-37.  Of the 70 foot valves purchased from United Pacific Distributors over that

---

[1]  Liberty Northwest is the worker's compensation surety which has adjusted and paid benefits on the worker's compensation claim of Durfee.

**Memorandum Decision and Order- 2**

period, 67 were delivered to Lewis-Goetz's warehouse in West Valley, Utah, and three were purchased by and delivered directly to the Sandy, Utah store. *Id*. The PT and Coupling foot valves were purchased by and delivered to the Brighton, Utah store. *Id*. The two Dixon Valve foot valves delivered in that time period were purchased by and delivered to the Sandy, Utah store. *Id*. During this period from January 2009 to May 30, 2012, the Idaho Falls location did not directly purchase any foot valves.[2] *Id*.

The records of foot valve inventory transfers between Lewis-Goetz's stores in the period of January 2009 to May 30, 2012 show that the Idaho Falls store received one 4" foot valve from the West Valley store on or about June 9, 2009; one 4" foot valve from the warehouse on July 10, 2009; and two 4" foot valves from the warehouse on September 16, 2010. *Id*. The transfer information available does not indicate the manufacturer or the wholesale distributor of those 4" foot valves. *Id*. Additionally, an "inventory check" on November 8, 2010 revealed an additional 4" foot valve at the Idaho Falls store. *Id*. However, the record before the court does not identify the source of the foot valve or the date on which it was obtained by the Idaho Falls store. *Id*.

On May 30, 2012, when Durfee purchased the 4" foot valve, there was only one 4" foot valve in the store's inventory. *Id*. The foot valve was on a shelf in the store identified as "DFVS-40 CAST IRON FOOT VALVE-4." Sokol Aff., Ex. E, Lewis-Goetz's Answers and Objection to Liberty Northwest's First Interrogatories (Dkt. 27-9), p. 10. The invoice provided to Durfee for the purchase identified the valve as a "DFVS-40 CAST IRON FOOT VALVE-4""

---

[2] Lewis-Goetz acquired the Idaho Falls store in January 2011. The Idaho Falls store underwent a computer system change in August 2011. After that change, the company was unable to access documents such as purchase orders and invoice forms from prior to that time, but was able to create spreadsheets to summarize that information. Sebastian Decl., Ex. D, Walker Dep., 10:20-25, 26:16-25; Lewis-Goetz's Supplemental Answers (Dkt. 27-11), pp. 8-9.

**Memorandum Decision and Order- 3**

Sebastian Decl., Ex. D, Walker Dep., Ex. 42, p. 103 (Dkt. 28-1).   However, Lewis-Goetz's

representative testified that Lewis-Goetz identified *all* 4" foot valves with this identification

number, regardless of the distributor or the manufacturer.   Sokol Aff., Ex. H, Walker Dep., 87:1-

17.   Durfee testified that there were no markings on the foot valve, other than a sticker labeled

"China," and the foot valve did not come with any materials or documentation, nor was it

contained in any packaging.   Sokol Aff., Ex. B, Deposition of Mark Durfee ("Durfee Dep.")

(Dkt. 27-5) 66:5-67:8 94:23-95:8.   When he purchased the foot valve, Durfee checked to see if

the valve was marked with a pressure rating and did not see one.   *Id*.

Durfee purchased the 4" foot valve to use in "mud rotary drilling" that he was conducting

in North Dakota for his employer, Independent Drilling, and for a North Dakota drilling

company, Thompson Drilling.   Aldridge Aff., Ex. A, Durfee Dep., 16:11-27:22.   Durfee first

used the  mud rotary drilling method in Idaho and drilled about five wells in 2008-2009 using

this method.   *Id*. at 101:18-105:1.   Durfee learned mud rotary drilling methods from a man from

Arizona named Jim Deere, an acquaintance of Independent Drilling's owner.   *Id*. at 101:24-

102:15. When Durfee first went to North Dakota to work in March of 2012, he went out with

Ryan Thompson from Thompson Drilling to observe the mud rotary drilling process and setup

that Thompson used in drilling wells.   *Id*. at 19:14-22:20. While in North Dakota in 2012, Durfee

drilled about 15 wells using the same mud rotary drilling technique set-up as he was using on

June 13, 2012, the date of the accident.   *Id*. at 40:2-8.   On that date, Durfee was drilling a well

that was about 100 feet deeper than previous wells he had drilled, which required that he use a

larger pump and larger components and hoses.   *Id*. at 40:6-23, 44:21-45:22.   One of these

components was the foot valve involved in the accident at issue in this case.

**Memorandum Decision and Order- 4**

In drilling this deeper well on June 13, 2012, Durfee was using a 4" foot valve for the first time.  *Id*. at 47:18-49:24, 55:20-67:14.  The foot valve is placed in a so-called "mud pit," from which a slurry-like mixture is pumped into the drilling cavity to buttress the walls of the drill hole.  In the later stages of the drilling process, air pressure is used to "develop" the well. While Durfee was conducting that part of the drilling process, the foot valve blew off of the drilling set-up and the escaping pressure launched a T-shaped piping assembly from the mud pit which struck Durfee in the head and caused his injuries.  *Id*. at 74:14-79:25.

Defendant Dixon Valve moves for summary judgment on the grounds that Plaintiffs have no proof that Dixon Valve designed, manufactured, distributed, or sold the 4" foot valve at issue in this litigation (Dkt. 27).  Defendant Lewis-Goetz moves for summary judgment on the grounds that Durfee misused the 4" foot valve and that his misuse was the sole cause of the accident and Durfee's injuries (Dkt. 50).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."

**Memorandum Decision and Order- 5**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id*. at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor.  *See Devereaux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324.  Where reasonable minds could differ on the materials facts at issue, summary judgment should not be granted.  *Anderson*, 477 U.S. at 251.

### III.  DIXON VALVE'S MOTION FOR SUMMARY JUDGMENT

Dixon Valve contends that Plaintiffs cannot show that the 4" foot valve was designed, manufactured, distributed, or sold by Dixon Valve.  Dixon Valve contends that certain facts are undisputed – that between January 2009 and May 30, 2012 (the date of Durfee's purchase) the

**Memorandum Decision and Order- 6**

Idaho Falls Lewis-Goetz store did not purchase any 4" foot valves directly from Dixon Valve and only received inventory transfers of 4" foot valves from Lewis-Goetz facilities that had *not* purchased Dixon Valve 4" foot valves during that timeframe.  Only the Sandy, Utah store had purchased 4" foot valves from Dixon Valve between January 2009 and May 30, 2012, and Lewis-Goetz's records do not show any transfers of 4" foot valves from the Sandy, Utah store to the Idaho Falls store in that time period.

While these facts support an argument that the valve involved in the accident may not have been a Dixon Valve supplied product, on summary judgment the court must draw all reasonable inferences in favor of the non-movant.  When doing so here, the record as a whole is such that reasonable minds could differ on whether the foot valve came from Dixon Valve.  Specifically, the following facts and evidence create genuine issues of material fact as to the source of the subject foot valve:

- The 4" foot valve was located on a shelf in the Idaho Falls Lewis-Goetz store that was labeled "DFVS-40 CAST IRON FOOT VALVE-4"";

- Durfee's invoice had the same identification, "DFVS-40 CAST IRON FOOT VALVE-4"" for the foot valve he purchased on May 30, 2012;

- Dr. Thomas Blotter, an expert for the Plaintiffs, compared the subject foot valve from the incident with two exemplar Dixon Valve 4" foot valves and concluded they were the same (*see* Blotter Declaration (Dkt. 28-2), ¶¶ 4-7);

- The inventory check in November 8, 2010 discovered a 4" foot valve in Idaho Falls, as to which the wholesaler's origin is unknown and was not one of the foot valves transferred from other Lewis-Goetz facilities in 2009 and 2010;

**Memorandum Decision and Order- 7**

- Dixon Valve was the supplier of foot valves to the Lewis-Goetz stores prior to 2009.[3]  It was not until 2009 that the primary supplier was switched to United Pacific Distributors;

- There is nothing in the record to indicate how quickly the foot valve inventory moved in and out of the various Lewis-Goetz stores, particularly as to the Idaho Falls store; and

- Lewis-Goetz continued to purchase from Dixon Valve, and it is unknown whether the Idaho Falls store had sold all of its pre-existing inventory of Dixon Valve 4" foot valves prior to Durfee's purchase on May 30, 2012.

Such facts, with all reasonable inferences drawn in favor of the non-movant, create genuine issues of material facts which preclude summary judgment on the present record.

### IV.  LEWIS-GOETZ'S MOTION FOR SUMMARY JUDGMENT

Lewis-Goetz contends that Durfee misused the foot valve and that his misuse was the sole cause of the accident.  Idaho law recognizes misuse as an affirmative defense in a products liability action.  *See* I.C. 6-1405(3)(a), *Corbridge v. Clark Equip. Co.*, 673 P.2d 1005, 1006 (Idaho 1986).   Misuse is defined as when "the product user does not act in a manner that would be expected of an ordinary reasonably prudent person who is likely to use the product in the same or similar circumstances."  I.C. § 6-1405(3)(a).  Generally, misuse is offered as evidence of comparative fault, but Idaho law recognizes that misuse can rise to the level where it can preclude any claim of liability against another person or entity as a matter of law.  *Corbridge*,

---

[3]  For these purposes, references to Lewis-Goetz necessarily include the predecessor company from which Lewis-Goetz purchased the Idaho and Utah stores.

**Memorandum Decision and Order- 8**

673 P.2d at 1006-07 ("While the language defining misuse in I.C. § 6-1405(3)(a) creates a jury question, where the undisputed facts lead to only one reasonable conclusion the court may rule as a matter of law.").

Lewis-Goetz points to the affidavit of Jeffrey Steinke in support of the misuse argument. Mr. Steinke is presented as a well-drilling expert, who attested that it is within the common knowledge of appropriately skilled and experienced water-well drillers in North Dakota that cast-iron foot valves such as the one used by Durfee on June 13, 2012, are not pressure rated and not intended to be used in pressurized drilling operations.[4]  Affidavit of Jeffrey Steinke ("Steinke Aff.") (Dkt. 50-11), ¶¶ 1-2, 5.   Mr. Steinke also opined that to "a reasonable degree of probability" "the sole cause of the accident" was Durfee's failure to design the well drilling operation in a manner that allowed for isolation of the foot valve from air pressure. *Id*. at ¶ 8. Lewis-Goetz contends that there is no genuine issue of fact based on Mr. Steinke's affidavit and opinions, that Durfee misused the product at issue and that such misuse was the sole cause of the accident that led to Durfee's injuries.

Mr. Steinke's opinions are certainly relevant to the misuse defense, but the Court is not persuaded on this record that they establish evidence of misuse that requires the granting of summary judgment in favor of Lewis-Goetz as a matter of law.  The question of whether there was any comparative negligence in Durfee's actions, and whether there was some product design

---

[4]  It is possible that a "North Dakota" well driller might be especially well-qualified to opine upon prudent practices for mud drilling techniques if those techniques are the usual methods of well drilling in North Dakota, but otherwise his identification as a North Dakota well-driller is of no legal significance.  This is not a case where – unlike, say, an Idaho medical malpractice case – there needs to be evidence of a community standard of care.

**Memorandum Decision and Order- 9**

or manufacture flaw in the foot valve, are subject to differing inferences on this record.  Further, although Mr. Steinke's purported credentials to reach the ultimate issue of liability is not challenged by Plaintiffs, the persuasiveness of his opinions in that regard are also subject to differing inferences and, at least on those ultimate measures, are opposed by the evidence drawn from Plaintiffs' expert, Dr. Blotter.

Hence, the Court finds that the issue of Durfee's use, or misuse, of the subject foot valve is one to be left to the jury as an issue of comparative responsibility.  There are genuine issues of material fact that preclude summary judgment based upon an argument that Durfee misused the foot valve and that, assuming such misuse, his use of the product was the sole cause of the accident.  In particular, reasonable inferences as required in a summary judgment context can and must be drawn on this record in support of the non-movants, from the following:

- Durfee observed other mud rotary drilling operations  in North Dakota in 2012 prior to creating his own, and such techniques may be prudent;

- Durfee drilled approximately 15 wells using the same technique, with smaller valves, prior to June 13, 2012, using pressure of up to 200 psi (pounds per square inch) (*see* Durfee Dep., 40:2-23; 114:11-115:2) and did so without any difficulty or incident such as happened on the date of the accident;

- The foot valve came with no packaging, no warnings, no instructions, and no markings; and

- Dr. Blotter, Plaintiffs' expert, testified that it "wouldn't make sense to put a valve in a water system and not expect a pressure to be applied" and that a foot valve

**Memorandum Decision and Order- 10**

should be designed to withstand transient pressure (Sebastian Decl., Ex. B.,

Deposition of Thomas Blotter ("Blotter Dep.") (Dkt. 53-2), 62:2-66:8).

Hence, there are genuine issues of material fact as to the cause of the incident and issues

of comparative responsibility that should be resolved by a jury.  *See Corbridge*, 673 P.2d at 1007

("[T]he language defining misuse in I..C. § 6-1405(3)(a) creates a jury question . . .").  Whether

it was Durfee's use, or misuse, which caused the injury, in part or in whole, as attested by Mr.

Steinke, or whether the foot valve should have been able to withstand some amount of transient

pressure, as testified to by Dr. Blotter, is a classic issue of fact that must be presented to a jury.

Further, the law recognizes that there can be more than one proximate cause of an accident.

Lewis-Goetz's motion for summary judgment will be denied.

## V.  DIXON VALVE'S MOTION TO COMPEL

For the reasons described on the record at the hearing held March 1, 2017, Dixon Valve's

motion to compel is granted.   In particular, Dixon Valve seeks documents identified by Liberty

Northwest's 30(b)(6) designee, Teresa Nolen, during her deposition – documents which were

described as contained in Liberty Northwest's claim files.  Liberty Northwest contends that

certain documents are protected by the work-product doctrine and has produced what it contends

is a sufficient privilege log.  The party seeking to withhold documents on the basis of attorney-

client privilege or the work product doctrine has the burden of proving that such protections

apply.  *See In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007).  Liberty Northwest's

privilege log does not comply with Fed. R. Civ. P. 26(b)(5) as it does not address many of the

documents that Ms. Nolen testified about in her deposition, including the claim file and what

payments were made and why. "Unless otherwise limited by court order, the scope of discovery

**Memorandum Decision and Order- 11**

is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). When a party withholds information otherwise discoverable, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The privilege log previously prepared by Liberty Northwest does not meet that standard.   Liberty Northwest is to provide an updated privilege log to Dixon Valve no later than March 15, 2017, along the lines described by the Court, "in a manner that...will enable other parties to assess the claim."

## ORDER

IT IS THEREFORE ORDERED:

1)      Dixon Valve's Motion for Summary Judgment (Dkt. 27) is DENIED:

2)      Lewis-Goetz's Motion for Summary Judgment (Dkt. 50) is DENIED; and

3)      Dixon Valve's Motion to Compel (Dkt. 34) is GRANTED.

DATED:  **March 10, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**Memorandum Decision and Order- 12**